FILED: JULY 24, 2008
08CV4214
JUDGE DOW, JR.
MAGISTRATE JUDGE COLE
EDA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO POLICE SERGEANTS ASSOCIATION an Illinois not for profit corporation SERGEANT LISA PRICE, an individual, SERGEANT RICHARD WISER, an individual, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. |
| | ) |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiffs, Chicago Police Sergeants Association-Police Benevolent and Protective Association-Unit 156-A, Lisa Price, and Richard Wiser ("CPSA members"), by their attorneys, CONNELLY, ROBERTS & MCGIVNEY LLC and AHERN, MALONEY & MORAN, LLC, for their complaint against the Defendant, City of Chicago, a Municipal Corporation, state:

This is also a civil action brought for a rule to show cause for noncompliance with, and otherwise enforce the terms of, the *Shakman Decree*. See *Shakman v. Democratic Party of Cook County*, Civil Action No. 69 C 2145, *et seq*.

1.     This is also a civil action brought for a rule to show cause for noncompliance with, and otherwise enforce the terms of, the *Shakman Decree*. See *Shakman v. Democratic Party of Cook County*, Civil Action No. 69 C 2145, *et seq*.

2.     This is an action brought pursuant to the Labor-Management Relations Act (29 U.S.C.A. § 185) and the common law of the State of Illinois to enjoin the breach of the Collective Bargaining Agreement in place between the City and the Association and to enjoin

any continued promotion of police employees using standards not in conformity with established law.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction to adjudicate issues pertaining to the enforcement of the *Shakman Decree* based on the decisions in *Shakman I, Shakman II*, and subsequent related litigation in the Seventh Circuit.

4.      This Court has original jurisdiction to adjudicate the Labor-Management Relations Act claims in this action pursuant to 29 U.S.C. § 185(a), and pendent jurisdiction to adjudicate the common law state claims associated therewith pursuant to 28 U.S.C. § 1338.  This Court has further jurisdiction based upon the terms of the consent decrees resulting from the *Shakman* litigation.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant, City of Chicago maintains its principal place of business in Chicago, Illinois, all parties are residents of this District, and all acts complained of took place in this District.

## COMMON FACTUAL ALLEGATIONS

6.      Plaintiff, Chicago Police Sergeants Association is a not for profit corporation organized under the laws of Illinois with its headquarters at 1616 W. Pershing Rd., Chicago, Illinois.

7.      Plaintiff, Lisa Price, is a sworn member of the Chicago Police Department holding the career service rank of Sergeant of Police.  Sergeant Price was sworn into the Department as an officer on August 20, 1990, and as a sergeant on May 25, 2000.

8.      Plaintiff, Richard Wiser, is a sworn member of the Chicago Police Department holding the career service rank of Sergeant of Police.  Sergeant Wiser was sworn into the Department as an officer on March 26, 1990, and as a sergeant on April 1, 1996.

9.     Sergeants Price and Wiser are registered voters in the State of Illinois and residents of the City of Chicago.

10.     Defendant, City of Chicago (the "City") was, and is, a Municipal Corporation organized and existing under, and by virtue of, the laws of the State of Illinois.

11.     The City maintains and operates a Department of Police (the "Department"). The Department regularly and routinely employs personnel in job title descriptions such as Lieutenant of Police.

12.     The City has promulgated certain Personnel Rules that pertain to its employees.

13.     Rule 9(1) of the City's Personnel Rules details how examinations shall be prepared and conducted for general employment and promotional purposes.

14.     Section 4 of Rule 9 states:

"**Conduct of Examination.**  The convenience of the City and the needs of the service may be considered in determining the time and place for holding examinations. Examination Procedures shall be conducted, and the test shall be held in such ways and under such conditions as to prevent fraud or other misconduct."

15.     Section 7 of Rule 9 states:

"**Confidential Nature of the Examination Process and Material.**  It is the responsibility of every employee and representative of the Department of Personnel to treat as confidential any information available to them concerning examination material and ratings earned by competitors.  Any employee engaging in corrupt or negligent practices in connection with examinations shall be subject to disciplinary action.  In order to protect the security of test material and to protect the rights and privacy of applicants, all applications, examination and test material shall be regarded as privileged and confidential and not available for public inspection."

16.     In July, 2006, the City announced that it would be conducting a promotional examination for the rank of Lieutenant, and that (a) the test would consist of written and oral assessment portions, and (b) to be eligible to take the oral assessment portion of the test the sergeant was required to previously have passed the written portion of the test.

17.     Plaintiff, Sergeant Price and Plaintiff, Sergeant Wiser, were eligible to take the oral assessment portion Lieutenant's examination, and in fact did take that portion of the examination on January 6, 2007.

18.     Sergeant Price and Sergeant Wiser were told that, due to alleged problems with the administration of the oral assessment portion of the examination given January 6, 2007, approximately fifty-one test results were affected and may not have been properly recorded.

19.     On May 1, 2007, the Department issued an announcement to all police personnel from Bradford L. Woods, Commander of the Personnel Division of the Chicago Police Department that stated that the oral assessment exercise portion of the January 6, 2007 examination would be re-administered.  (A copy of that announcement is attached at Exhibit A).

20.     To be eligible to be re-tested on the oral assessment portion of the examination, a sergeant was required to have taken the first oral portion of the examination on January 6, 2007.

21.     The oral assessment portion of the January 6, 2007 test consisted of seven different scenarios.

22.     For the first scenario, each applicant was allowed twenty minutes to prepare a response.

23.     Each of the other six scenarios was shown separately by video.  The sergeant-applicant taking that portion of the examination had no prior knowledge of what would be contained in the video clip.  The applicant then had ninety seconds from the conclusion of the video clip to give a verbal response.  Upon completing the question, the applicant would move on to the next video clip, until all six scenarios were addressed.

24.     The purpose of the oral assessment portion of the January 6, 2007 test was to have the sergeants assess a situation and immediately give proper orders for that particular situation.

25.     According to the announcement from the Department regarding the re-test of the oral assessment portion of the examination, "the re-test will consist of the same questions administered on January 6, 2007." (See Exhibit A, pg. 2). "Anyone taking the re-test on June 23, 2007 will have the evaluation of the oral portion of the examination based upon the re-test score." *Id.* "For those sergeants that do not desire to take the re-test or who are unable to take the re-test, on June 23, 2007, the evaluation of the oral portion of the examination will be based on their January 6, 2007 performance." *Id.*

26.     On information and belief, the City had not evaluated or graded the oral assessment portion of the January 6, 2007 test for the 660 sergeants who took that portion of the examination at the time the sergeants were required to decide if they should sit for the retest. As such, qualified sergeants could not make an informed decision whether to take the re-test of the oral portion of the examination.

27.     The Police Lieutenants' examination was first announced by the Department in July of 2006. Adequate time was given to each Sergeant to apply for the test, and obtain study books and form study groups. The written portion of the Police Lieutenants' examination was administered in September of 2006. According to the original announcement, the oral assessment portion of the test would be administered within ten weeks of the written portion of the test. In November, 2006 that the Department announced that the oral portion would be administered on January 6, 2007.

28.     Each and every sergeant that took the written test (approximately 660) was aware that the oral portion of the test would be administered within a reasonable time period after the written portion of the test was given.

29.    Sergeant Price, Sergeant Wiser, and others, expended significant time and effort to join study groups and obtain study materials.  They spent many hours to prepare for the January 2007 oral assessment portion of the test.

30.    The oral assessment exercise was designed to measure important characteristics for the lieutenants' position which a written examination could not adequately test, including the sergeant's ability to:  (a) articulate information, thoughts, and ideas to others; (b) understand the feelings and motives of others; (c) adapt to shifting priorities or ambiguous work situations; (d) remember details and recall relevant information in such dynamic situations; and (e) think on one's feet when encountering spontaneous situations.

31.    The City of Chicago conducted a re-test of the January 6, 2007, oral assessment exercise, using questions identical to those that were used previously, on June 23, 2007.

32.    A re-test of the January 6, 2007, oral assessment exercise using questions identical to those that were used previously did not serve, but instead, only frustrated the goals recited in Paragraph 24 above.  Using the same questions did not test the sergeant's ability to quickly analyze and address situations that confront lieutenants in the field, nor accurately predict how they will react to spontaneous situations.  Rather, those taking the re-test were able to study the questions given on the earlier test and prepare to provide answers for those questions.  Instead of studying for a wide range of possible questions that required quick analysis and precise decision-making, the applicant needed only to memorize answers to a known group of questions.  That testing practice did not accurately measure the skills needed for the position, and constituted misconduct by the City under Section 4 of Rule 9 of its Personnel Rules.

33.    After the January 6, 2007 test, but prior to the June 23, 2007 re-test, certain applicants had access to senior command personnel, or other supervisors in the Department to

review the test questions and determine the proper format and order of answers. Sergeant Price, Sergeant Wiser, and others did not have such access.

34.     The City and its residents need qualified police lieutenants that can think on their feet when encountering novel situations in the field. Relying on a re-test using questions previously posed will result in the promotions of applicants who do not have those qualities and abilities. Allowing such a promotional procedure to occur is unfair to the citizens of the City who are entitled to proper police protection and constitutes misconduct under Section 4 of Rule 9 of the City's Personnel Rules.

35.     Many sergeants, including Sergeants Price and Wiser, made travel plans and furlough arrangements long before the announcement of the re-test. As a result, they were not available for the re-test on June 23, 2007. These travel and furlough plans were not made until after the January 6, 2007 test date. Other sergeants also were not allowed to take the test due to inability to switch their day off group. Short notice of the new test prevented those sergeants from taking the re-test.

36.     The City claimed that there were administrative problems with the conduct of the January 2007 oral assessment portion of the examination, yet refused to disclose what those problems were, who was affected, and the test scores of those not affected. As such, it was impossible for Sergeant Price, Sergeant Wiser, and others, to have made an informed decision as to whether or not to take the re-test in June 2007.

37.     If an applicant was not affected by the alleged test administration problems, there is no certainty that the applicant performed the same or better the second time. As a corollary, the re-test guaranteed that other sergeants who may have done poorly on the January 6, 2007 test, because they could not respond properly to the spontaneous encounters, had an opportunity to

score higher on the re-test by simply memorizing or being familiar with the questions previously posed.

38.     The City has an obligation to comply with the ordinances of the City of Chicago and the Personnel Rules it has adopted pursuant to those ordinances.

39.     CPSA members, and specifically Sergeant Price and Sergeant Wiser, will be irreparably damaged and harmed in the event that the City is not enjoined and barred from using the results of the re-test of the oral assessment portion of the examination on June 23, 2007.  On January 6, 2007, they were tested on the criteria listed in Paragraph 23 and the re-test, by its methodology, renders those criteria meaningless.

40.     CPSA members do not have an adequate remedy at law.  The only other way a sergeant can be promoted to lieutenant, besides the examination, is through the merit selection process.  Only thirty percent of any given promotional list is based upon merit selection.  Further, the guidelines for merit selection are generally unknown to the plaintiffs, and other police sergeants.

41.     The CPSA membership has a reasonable likelihood of succeeding on the merits in this case.  Retesting 660 sergeants using the same tests previously given is blatantly unfair to the plaintiffs and those sergeants who did well on the first test by studying and preparing for it.  It is also unfair to the citizens of the City of Chicago who demand proper and adequate police protection, and need properly qualified lieutenants on the police force.

42.     Balancing the equities also favors the plaintiffs.  Barring the use of the scores gained from previous testing will not produce an inequitable result.  The City has conceded that it would only take six to eight weeks, at a cost of approximately $100,000.00, to develop a new test.  Considering that such a test would be used for the next six years to make promotions from

sergeant to lieutenant and would truly test qualifications for promotion, this is not an unreasonable cost or time extension.

43.     Injunctive relief against the City barring it from using the results of the two 2007 tests will preserve the status quo of all parties and not adversely affect the interests of the City or its citizens.

## COUNT I – *SHAKMAN DECREE*

44.     Plaintiffs restate and reallege paragraphs 1-43 of its Claims as paragraph 44 of Count I of their Claims, as though fully set forth herein.

45.     CPSA members have a right to work at a career.  They further have a right to seek advancement in that career, without discrimination, unfair employment standards and practices, or other disadvantage.

46.     The City of Chicago has implemented numerous standards and practices within the police department which are adversary to CPSA members' interests as voters and employees of the City of Chicago.  The City of Chicago has also failed to follow other standards and procedures which are intended to ensure a fair and nondiscriminatory promotional process within the police department.

47.     CPSA members' reputations, good standing within the department, and the community, as well as their actual and potential livelihoods have been adversely effected as a direct, and proximate, result of the City of Chicago's failure to comply with the provisions of the *Shakman Decree* with regard to its promotional process.

48.     Further, CPSA members have sustained injury to their associational rights as voters based on Defendant's failure to comply with the *Shakman Decree* and other employment practices.

49.     These injuries will be redressed by a favorable decision of this Court.

50.     The injuries rise above a general employee grievance and have been to the detriment of Sergeants Price and Wiser, as well as the CPSA present, and future, membership.

WHEREFORE, Plaintiffs, pray that this Court:

A)     declare the City of Chicago's practice of using any results from past departmental testing to determine, or establish a pool of candidates eligible for promotion to the grade of lieutenant is unjust and/ or violative of CPSA members rights;

B)     declare the City of Chicago's practice of making promotions to the grade of lieutenant based on test scores, interviews, or other information gathered from, or in conjunction with past departmental promotional testing or screening is unjust and/ or violative of CPSA members rights;

C)     hold Defendant in civil contempt for failure to comply with the *Shakman Decree*;

D)     order Defendant to comply with the provisions of the *Shakman Decree*; and, or,

F)     enter judgment in their favor, and against the City of Chicago, in excess of $75,000, plus their costs and fees, or for such other relief that this Court finds just.

## COUNT II – BREACH OF AGREEMENT

51.     Plaintiffs restate and reallege paragraphs 1-50 of its Claims as paragraph 51 of Count II of their Claims, as though fully set forth herein.

52.     Defendant, the City of Chicago, entered into a Collective Bargaining Agreement with CPSA for the benefit of the CPSA membership.

53.     CPSA performed duties under the contract by receiving consideration which was separate from any other compensation or benefit CPSA was to receive as a condition of its members' employment with the City of Chicago.

54.     Upon information, and belief, the City of Chicago has acted independently, and in conjunction with others, to interfere in the affairs of past and present CPSA members. Specifically, the City of Chicago has implemented non-standard and/ or illegal testing and promotion practices for the promotion of sergeants to the grade of lieutenant.

55.     As a result of the City of Chicago's activities, CPSA members have suffered actual and potential injury due to Defendants improper interference with the employment contract established with CPSA for the benefit of its membership.

WHEREFORE, Plaintiffs, pray that this Court enter judgment in their favor, and against the City of Chicago, in excess of $75,000, plus their costs, or for such other relief that this Court finds just.

## COUNT III – WRIT OF MANDAMUS

56.     Plaintiffs restate and reallege paragraphs 1-55 of its Claims as paragraph 56 of Count III of their Claims, as though fully set forth herein.

57.     CPSA members have demanded that the City of Chicago implement fair testing procedures, discard the results of the 2007 round of testing, establish a new test to be used for determining promotions to the grade of lieutenant, and discontinue use of the results of the 2007 round of testing as the basis for current promotions to the grade of lieutenant.

58.     The City of Chicago had a non-discretionary duty to act on each and every one of the demands made by CPSA and its membership and has failed to do so.

59.     It is well within the clear authority of the City of Chicago, and its agents, to satisfy each of these demands with respect to employment procedures in light of *Shakman*.

WHEREFORE, Plaintiffs pray that this Court issue a writ of mandamus to compel the City of Chicago:

11

A)    implement fair testing procedures;

B)    discard the results of the 2007 round of testing;

C)    establish a new test to be used for determining promotions to the grade of lieutenant;

D)    discontinue use of the results of the 2007 round of testing as the basis for current promotions to the grade of lieutenant; and,

E)    enter judgment in their favor, and against the City of Chicago, in excess of $75,000, plus their costs and fees, or for such other relief that this Court finds just.

## COUNT IV – PERMANENT INJUNCTION

60.    Plaintiffs restate and reallege paragraphs 1-59 of its Claims as paragraph 60 of Count IV of their Claims, as though fully set forth herein.

61.    CPSA members have a right to work at a career. They further have a right to seek advancement in that career, without discrimination, unfair employment standards and practices, or other disadvantage.

62.    CPSA members have suffered irreparable injury to their careers and reputations within the police department as a result of the actions of Defendants.

63.    The injuries inflicted on CPSA members are practically incalculable and therefore no monetary award, or other remedy at law, is completely adequate to compensate CPSA members for their injuries.

64.    Considering the grave injuries sustained by CPSA members in relation to the limited detriment to Defendants, remedy in equity, in the form of injunction, is warranted to protect CPSA member's good name in the community, their livelihood, and, most importantly, their right to equality in the workplace, specifically in the implementation of promotion processes which directly impact their careers within the Chicago Police Department.

65.     An order of permanent injunction barring Defendants activities is in the highest interest of justice and in the furtherance of the public interest protected by this Court.

WHEREFORE, Plaintiffs, pray that this Court:

A)     permanently enjoin the City of Chicago from using any results from past departmental testing to determine, or establish a pool of candidates eligible for promotion to the grade of lieutenant;

B)     enjoin the City of Chicago from making any promotions to the grade of lieutenant based on test scores, interviews, or other information gathered from, or in conjunction with past departmental promotional testing or screening; and;

C)     for such other relief that this Court finds just.

## COUNT V – TEMPORARY INJUNCTION

66.     Plaintiffs restate and reallege paragraphs 1-65 of its Claims as paragraph 66 of Count V of their Claims, as though fully set forth herein.

67.     CPSA members have a right to work at a career.  They further have a right to seek advancement in that career, without discrimination, unfair employment standards and practices, or other disadvantage.

68.     CPSA members have suffered irreparable injury to their careers and reputations within the police department as a result of the actions of Defendants.

69.     The injuries inflicted on CPSA members are practically incalculable and therefore no monetary award, or other remedy at law, is completely adequate to compensate CPSA members for their injuries.

70.     Considering the grave injuries sustained by CPSA members in relation to the limited detriment to Defendants, remedy in equity, in the form of injunction, is warranted to protect CPSA member's good name in the community, their livelihood, and, most importantly,

their right to equality in the workplace, specifically in the implementation of promotion processes which directly impact their careers within the Chicago Police Department.

71.     An order of temporary injunction barring Defendants activities is in the highest interest of justice and in the furtherance of the public interest protected by this Court.

WHEREFORE, Plaintiffs, pray that this Court:

A)     temporarily enjoin the City of Chicago from using any results from past departmental testing to determine, or establish a pool of candidates eligible for promotion to the grade of lieutenant;

B)     enjoin the City of Chicago from making any promotions to the grade of lieutenant based on test scores, interviews, or other information gathered from, or in conjunction with past departmental promotional testing or screening; and;

C)     for such other relief that this Court finds just.

## COUNT VI – BREACH OF FIDUCIARY DUTY

72.     Plaintiffs restate and reallege paragraphs 1-71 of its Claims as paragraph 72 of Count VI of their Claims, as though fully set forth herein.

73.     Defendant, the City of Chicago, had a duty to honor the contract established with the CPSA membership.

74.     Defendant, the City of Chicago, had a duty to implement and follow promotion practices consistent with the Collective Bargaining Agreement and applicable local and Illinois law.

75.     Upon information, and belief, the City of Chicago has acted independently, and in conjunction with others, to interfere in the affairs of past and present CPSA members.

Specifically, the City of Chicago has implemented non-standard and/ or illegal testing and promotion practices for the promotion of sergeants to the grade of lieutenant.

76.    The City of Chicago breached his duty to CPSA in its performance of the activities stated in these Claims violating its obligations as a municipal employer and party to the Collective Bargaining Agreement.

77.    As a result of the City of Chicago's activities, CPSA members have suffered actual, and potential, injury due to Defendants breach of his duty as a municipal employer and party to the Collective Bargaining Agreement.

WHEREFORE, Plaintiffs, pray that this Court enter judgment in their favor, and against the City of Chicago, in excess of $75,000, plus their costs and fees, or for such other relief that this Court finds just.

### COUNT VII – FRAUDULENT MISREPRESENTATION

78.    Plaintiffs restate and reallege paragraphs 1-77 of its Claims as paragraph 78 of Count VII of its Claims, as though fully set forth herein.

79.    The City of Chicago made numerous materially false statements in reference to the practices it would use to promote sergeants to the grade of lieutenant.

80.    The City of Chicago knew these statements misleading or false at the time they were made.

81.    These statements were made with the intent to induce action on the part of the CPSA membership.

82.    The CPSA membership acted with reliance on these statements with respect to the promotion process.

83.    As a result of the City of Chicago's activities CPSA members have suffered actual, and potential, injury due to Defendant's misrepresentations of the standards and practices to be implemented and followed in the promotion process.

WHEREFORE, Plaintiffs,, pray that this Court enter judgment in their favor, and against the City of Chicago, in excess of $75,000, plus their costs and fees, or for such other relief that this Court finds just.

## COUNT VIII – DECLARATORY JUDGMENT

84.    Plaintiffs restate and reallege paragraphs 1-83 of its Claims as paragraph 84 of Count VIII of their Claims, as though fully set forth herein.

85.    CPSA members have a protectable and tangible interest in the uniform application of standards and practices regarding promotion within the Chicago Police Department.

86.    The City of Chicago has implemented promotion practices which are contrary to the interests of the CPSA membership, specifically the conduct surrounding the testing conducted in 2007 for the promotion of sergeants to the grade of lieutenant.

87.    An actual controversy exists between the CPSA and the City of Chicago, based on the denial of CPSA requests for uniform testing procedures and the litigation arising from that denial.

WHEREFORE, Plaintiffs, pray that this Court:

A)    declare the City of Chicago's practice of using any results from past departmental testing to determine, or establish a pool of candidates eligible for promotion to the grade of lieutenant is unjust and/ or violative of CPSA members rights;

B)    declare the City of Chicago's practice of making promotions to the grade of lieutenant based on test scores, interviews, or other information gathered from, or

in conjunction with past departmental promotional testing or screening is unjust and/ or violative of CPSA members rights;

C)      hold Defendant in civil contempt for failure to comply with the *Shakman Decree*;

D)      order Defendant to comply with the provisions of the *Shakman Decree*; and, or,

F)      for such other relief that this Court finds just.

                                          Respectfully submitted,

Dated:  July 24, 2008                     CHICAGO POLICE SERGEANTS
                                          ASSOCIATION,
                                          LISA PRICE,
                                          RICHARD WISER


                                          By:____/s/ Matthew P. Connelly____
                                                  Matthew P. Connelly

Matthew P. Connelly
Corey P. O'Dell
Thomas R. Rakowski
Jeffrey J. Scolaro
Connelly Roberts & McGivney LLC
55 W Monroe Street, Suite 1700
Chicago, IL  60603
(312) 251-9600

Edward M. Maloney
Ahern, Maloney & Moran LLC
9333 Lawler Avenue, Suite 540
Skokie, IL  60077
(847) 676-2080

<u>VERIFICATION</u>

I, Lisa Price, a citizen of the United States and a resident of the State of Illinois, am a properly sworn member of the Chicago Police Department holding the career grade of Sergeant. I have read the foregoing Verified Claims and Complaint for Mandamus and know the contents thereof, and declare under penalty of perjury under the laws of the United States of America that the foregoing factual averments are true and correct to the best of my knowledge and belief.

July 23, 2008

Lisa Price

## VERIFICATION

I, Richard Wiser, a citizen of the United States and a resident of the State of Illinois, am a properly sworn member of the Chicago Police Department holding the career grade of Sergeant. I have read the foregoing Verified Claims and Complaint for Mandamus and know the contents thereof, and declare under penalty of perjury under the laws of the United States of America that the foregoing factual averments are true and correct to the best of my knowledge and belief.

July 23, 2008

Richard Wiser