# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO POLICE SERGEANTS ASSOCIATION, SERGEANT LISA PRICE, and SERGEANT RICHARD WISER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 08-cv-4214 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On July 24, 2008, Plaintiffs Chicago Police Sergeants Association (the "Association"), Sergeant Lisa Price ("Price"), and Sergeant Richard Wiser ("Wiser") (collectively "Plaintiffs") filed their complaint [1] against Defendant City of Chicago (the "City"). Plaintiffs' claims are based on the City's promotional examination for the rank of police lieutenant, and the City's use of a re-test in promoting applicants after unspecified administration problems hindered the first test. On September 3, 2010, the Court granted Defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and dismissed Plaintiffs' complaint without prejudice. See *Chicago Police Sergeants Assoc. v. City of Chicago*, 2010 WL 3526486, at *7 (N.D. Ill. Sept. 3, 2010). The Court allowed Plaintiffs to file an amended complaint, which they did on November 3, 2010 [135]. Currently before the Court is Defendant's motion [139] to dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court concludes that Plaintiffs' First Amended Complaint [135] fails to properly state a claim arising under the *Shakman* Decree. Accordingly, Defendant's motion to dismiss [139] is granted. However, as explained below,

because Plaintiffs' claims do not appear to be completely time barred and because Plaintiffs may be able to correct the other flaws in their complaint, the dismissal is not with prejudice. Plaintiffs are given 21 days from the date of this order in which to file an amended complaint if they believe that they can cure the pleading deficiencies discussed below. This will be Plaintiffs' final opportunity—any subsequent dismissal will be with prejudice.

## I.  Factual Background[1]

In July 2006, the City announced that it would be conducting an examination for the rank of lieutenant (the "Lieutenant's Exam"). The examination was comprised of a written and an oral portion. In order to take the oral portion, an applicant first had to pass the written portion, which both Price and Wiser did. Wiser and Price took the oral portion on January 6, 2007 (the "January test"), but were told that there were unspecified problems with the administration of the oral exam and that 51 of the 660 test results might not have been properly recorded. On May 1, 2007, the City announced that it would readminister the oral portion on June 23, 2007 (the "June re-test") using the same questions that had appeared on the January test, and that it would allow anyone who had taken the January test the option of taking the June re-test or resting on his or her January test performance. Based on the January test and the June re-test, the City created a promotion list from which the City made all promotions.

On July 24, 2008, Plaintiffs filed their Complaint [1], alleging that the City violated the *Shakman* Decree because the City re-administered the oral portion of the Lieutenant's Exam in June using the same questions that had appeared on the January test. Comp. ¶ 32; see also FAC

---

[1] See the Court's prior opinion, *Chicago Police Sergeants Assoc.*, 2010 WL 3526486 at *1-*3, for a more detailed discussion of the relevant factual background. For purposes of Defendant's motion, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g. Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F. 3d 614, 618 (7th Cir. 2007). Citations to Plaintiffs' First Amended Complaint are set out as "FAC ¶ ___."

¶¶ 29-31. (Plaintiffs alleged that the whole point of the oral exam was to test applicants' ability to think on their feet, and re-using the same questions from the January test completely vitiated that purpose). Plaintiffs further alleged that after the January test, but before the June re-test, certain applicants – but not Price and Wiser – had access to senior command personnel or other supervisors who allowed them to review the test questions and provided them with information about the proper format and order of answers. Compl. ¶ 33; see also FAC ¶ 32. Additionally, Plaintiffs alleged that Price and Wiser could not make an informed decision as to whether they should sit for the June re-test or rest on their prior score because the City had not evaluated or graded the January test at the time that they were required to decide if they should sit for the June re-test. Compl. ¶ 26; see also FAC ¶ 26.

On September 3, 2010, the Court dismissed Plaintiffs' *Shakman* claim without prejudice because "[t]here simply [were] no factual allegations in the complaint sufficient to raise above the 'speculative level' any possibility that the City's conduct regarding the June re-test was politically motivated or to put the City on notice of the nature of any *Shakman*-related claims against it." *Chicago Police Sergeants Assoc.*, 2010 WL 3526486 at *5. Nevertheless, the Court allowed Plaintiffs to file an amended complaint if they believed that they could overcome the flaws identified in the order. *Id*. at *6. The Court cautioned that should Plaintiffs choose to file an amended complaint, "Plaintiffs must plead sufficient factual allegations showing how City decision makers' conduct regarding the June re-test was politically motivated." *Id*.

On November 3, 2010, Plaintiffs filed their First Amended Complaint [135]. Plaintiffs attempted to cure the pleading defects in their *Shakman* claim by adding five paragraphs under the heading "Count I- *Shakman Decree*." They read in their entirety as follows:

43. Furthermore, upon information and belief, the City administered the June 23rd Re-test to specifically advance its politically-related causes and promote certain individuals with political connections.

44. Upon information and belief, certain individuals that the City wanted promoted because of their political affiliations, had not passed the January 6th Oral Exam. Therefore, the City re-administered the test to give those certain individuals another opportunity to make the Promotional List.

45. For example, Anthony Carothers took the June 23rd Retest and was immediately placed on the Promotional List. Furthermore, Anthony Carothers was part of the first group of individuals from the Promotional List that was promoted to Lieutenant.

46. At the time of Anthony Carothers' promotion, his brother, Ald. Issac "Ike" Carothers (29th Ward) was chairman of the City Council's Police and Fire Committee. The promotion of Anthony Carothers was ushered forward for solely political reasons and, specifically, because his brother was the chairman of the City Council's Police and Fire Committee.

47. Accordingly, the City's administration of the June 23rd Test violated the *Shakman Decree* by attempting to advance a specific and politically-related cause.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss pursuant to Rule 12 (b)(6), courts "must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them." *Id*. at 1521 (quoting *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level,"

assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations, quotation marks, and brackets omitted).

### III.     Discussion

#### A.     Count I : *Shakman* Decree

The Court discussed the requirements for stating a claim under the *Shakman* Decree in its prior opinion. *Chicago Police Sergeants Assoc.*, 2010 WL 3526486 at *4. Briefly, the *Shakman* Decree prevents the City of Chicago from "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996) (quoting *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979)). To state a claim under the *Shakman* Decree, a plaintiff must establish that a political reason or factor was the cause of the complained of decision. *Id*. Once the plaintiff shows this, "the burden shifts to the defendant to show that it would have made the same decision notwithstanding the protected conduct." *Id*.

Defendant asserts three arguments against Plaintiff's revised *Shakman* claim and the Court will address each of them in turn. First, Defendant argues that the amended *Shakman* claim is untimely, because it contains new facts and independent theories of wrongdoing that do not relate back to Plaintiffs' original complaint. Second, Defendant argues that the amended claim is subject to dismissal because it contains internally inconsistent factual allegations.

Finally, Defendant argues that the amended claim fails to plausibly allege that the City administered the June re-test to specifically advance its politically-related causes and promote certain individuals with political connections.

In their memorandum in support of the instant motion ([144] at 7-10), Defendant argues that Plaintiffs' amended *Shakman* claim is time-barred. The Seventh Circuit teaches that because "[t]he *Shakman* decree is closely analogous to Title VII of the Civil Rights Act of 1964" the "180-day period of limitations established by Title VII applies to contempt proceedings under the *Shakman* decree." *Smith v. City of Chicago*, 769 F.2d 408, 413 (7th Cir. 1985) ("In order to promote clarity, we adopt the entire corpus of Title VII timing rules, including those defining the accrual of the claim and tolling the period of limitations."). Because under *Shakman* "the district court, sitting to enforce its decree, plays the role of both agency and court," the requirement to first file a charge with the EEOC is removed. *Id.* Instead, in order to be timely, a complaint alleging a *Shakman* violation must be filed within 180 days of the alleged "discriminatory act." *Id.*

However, a plaintiff's failure to adhere to a statute of limitations is an affirmative defense and therefore generally is not amenable to dismissal at the complaint stage. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Dismissal on statute of limitations grounds is only appropriate where a plaintiff pleads herself out of court by establishing that a defendant is entitled to a limtiations defense. See *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.2d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense").

6

Here, it is clear that any claims based solely on the administration of the June 23, 2007 re-test are time barred; for Plaintiffs filed their initial complaint in this Court more than a year after the re-test took place. However, in a recent case of which Defendant is well aware, the Supreme Court construed the timing rules under Title VII claims to hold that a plaintiff who did not file a timely charge challenging the initial adoption of a particular discriminatory practice may still bring a claim under Title VII based on the later *implementation* of that previously-adopted practice. *Lewis v. City of Chicago*, 130 S.Ct. 2191, 2197-98 (2010). In *Lewis*, the plaintiffs sued years after the City of Chicago administered an admittedly-discriminatory examination to applicants seeking to serve in the Chicago Fire Department. *Id.* at 2195. The scores from that exam were used to build a list of qualified applicants who could be hired into the department, which the City hired from in eleven rounds of hiring over the next six years. *Id.* at 2195-96. The Supreme Court found that the City's initial "decision to adopt the cutoff score (and to create a list of the applicants above it) gave rise to a freestanding disparate-impact claim" that, because no timely charge was filed attacking it, was time barred. *Id.* at 2199. However, the Court clarified that each time that the City implemented its earlier decision and excluded the applicants with lower scores on the exam, a "new violation occurred." *Id.* (citing 42 U.S.C. § 2000e-2(k)). *Lewis*, therefore, stands for the proposition that later implementation of a discriminatory policy can qualify as a new, actionable "employment practice." See *Id.* at 2198-99. Of course, in order to be timely, a plaintiff must identify a "present violation" within the 300-day limitations period preceding the filing of the charge (or in this case, the complaint). See 130 S.Ct. at 2199 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

Plaintiffs' amended complaint seeks not only a declaration that the June 23, 2007 re-test was illegal, but also a declaration that the "City of Chicago's practice of making promotions to

the grade of lieutenant based on test scores, interviews, or other information gathered" during the challenged testing was wrongful. FAC at Prayer for Relief. Dismissal is inappropriate because Plaintiff's amended complaint does not, on its face, demonstrate that no promotions were made during the 300-day limitations period preceding the filing of that pleading. *Cancer Found., Inc.*, 559 F.3d at 675. To the contrary, it appears from Defendant's brief that the City has promoted "dozens of sergeants" based on the results from the challenged examinations, in a number of rounds of promotions. Def. Mem. [144] at 3. According to Defendant's brief, the "first round of promotions" based on the examination took place "in January 2008." *Id*. at 8; see also Def. Ex. F (Personnel Order No. 2008-003 (list of promotions dated January 16, 2008)). There was a second round of promotions in April of 2009 (*id*.; Def. Ex. F) and "the third, and most recent, round of promotions occurred in October 2010" (*id*. at 3 n.4).

Having determined that the face of the complaint does not demonstrate that Plaintiff's *Shakman* claim is completely time barred, the Court could end its analysis here. However, the Court will write further to clarify which aspects of the *Shakman* claim are and are not "hopelessly time-barred." *Cancer Found., Inc.*, 559 F.3d at 675. Much of the parties' briefing on the instant motion concerned whether or not the amended complaint (filed on November 3, 2010) "relates back" to Plaintiffs' original complaint, which was filed on July 24, 2008. For the reasons explained above, the "relation back" question does not bear on whether Plaintiff's entire *Shakman* claim is untimely. But this issue is not one without any significance; for, if the amended complaint did relate back to the original pleading, Plaintiffs could sue for any promotions that occurred in the 300 days preceding July 24, 2008 (and after)—a time period that would include both the 2008 and 2009 promotions. On the other hand, if the amended complaint did *not* relate back to the original complaint, only discriminatory acts that occurred within the

300 day period preceding November 3, 2010 would be actionable (the October 2010 promotion falls within this period).

The Court concludes that the amended *Shakman* claim does *not* relate back to original *Shakman* claim. An amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In construing this rule, courts have focused "whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006); see also *Mayle v. Felix*, 545 U.S. 644, 664 (2005) ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

Plaintiffs argue that the amended *Shakman* claim is based on more specific facts added to the same matters alleged in the original *Shakman* claim, of which Defendant had notice. However, the Court has previously concluded that Plaintiffs' original Complaint did "not allege that the City's decision to offer the re-test or the way in which the re-test was conducted was designed to favor or prejudice anyone because of his or her political affiliations or activities." *Chicago Police Sergeants Assoc.*, 2010 WL 3526486 at *5. The Court further concluded that Plaintiffs' original Complaint contained no factual allegations "to put the City on notice of the nature of any *Shakman*-related claim against it." *Id*. Because Plaintiffs failed to put the City on notice of any *Shakman*-related claim until now, there is nothing that the new factual allegations could reasonably relate back to. See *Santamarina*, 466 F.3d at 573.

In addition, the amended *Shakman* claim cannot relate back to the original claim because the newly added factual allegations are directly contrary to the allegations set out in the original complaint. See *Mayle*, 545 U.S. at 664. Plaintiffs' original *Shakman* claim was based on allegations that the City violated the *Shakman* Decree because sergeants, including Price and Wiser, could not make an informed decision as to whether they should take the June re-test given that the City had not evaluated or graded the January test at the time they were required to decide if they should sit for the June re-test. Compl. ¶ 28. The amended complaint contains that same allegation, see FAC ¶ 26, but also alleges that "certain individuals that the City wanted promoted because of their political affiliations, had not passed the January 6th Oral Exam" and that "the City re-administered the test to give those certain individuals another opportunity to make the Promotion List." FAC ¶ 44. The most logical construction of the allegation in ¶ 44 of the amended complaint—that certain politically-connected applicants "had not passed the January 6th Oral Exam"—is that the City scored the test and these "certain individuals" failed. So construed, the original complaint alleged that the City never scored the January test, while the amended complaint alleges that the City both did and did not score the January test. The Court cannot see how the new allegation—that the City *did* score the January test—could be part of the "common core of operative facts" alleged in the original complaint, when that allegation is directly contradictory to the factual picture presented in the initial pleading.

The discussion above segues neatly into Defendant's second argument: that Plaintiff's new *Shakman* claim is subject to dismissal because it contains internally inconsistent factual allegations (in that it alleges that the City both did and did not score the January test).

A party may state "as many separate claims or defenses as the party has regardless of consistency." Fed. R. Civ. P. 8(e)(2). The liberal federal pleading rules allow plaintiffs to plead

10

legal theories in the alternative.  See *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternatively or hypothetically.'").  Additionally, contrary to Defendant's contention, a plaintiff may alternatively plead inconsistent facts as well as inconsistent theories.  See Fed. R. Civ. P. 8(d); *Holman v. Indiana*, 211 F.3d 399, 406-07 (7th Cir. 2000); *Moriarty v. Larry G. Lewis Funeral Dir. Ltd.*, 150 F.3d 773, 777-78 (7th Cir. 1998); *Ellison v. Aurora East School Dist. 131*, 2009 WL 884949, at *2 (N.D. Ill. March 27, 2009); *Guarantee Trust Life Ins. Co. v. American United Life Ins. Co.*, 2003 WL 23518661, at *1-2 (N.D. Ill. Dec. 17, 2003); Charles Alan Wright & Arthur R. Miller, FEDERAL PRAC. & PROC.: CIV. 3d § 1283 at 726-27 (2004).  But compare *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (*dictum* cited by Defendant) ("Although our pleading rules do not tolerate factual inconsistencies in a complaint, they do permit inconsistencies in legal theories.").

The *dictum* in *Tamayo* regarding factual inconsistencies not being permitted is a reference to not being able to plead legal conclusions or conclusory facts that are inconsistent with detailed factual allegations in the body of a complaint or inconsistent with facts shown by supporting exhibits attached to a complaint.  See *id.* at 1086 (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006), *abrogation recognized*, *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)).  A Plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo*, 526 F.3d at 1086 ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the

defendant may use those facts to demonstrate that she is not entitled to relief."). The crux of Plaintiff's amended *Shakman* claim is that "certain individuals that the City wanted promoted because of their political affiliations, had not passed the January 6th Oral Exam." FAC ¶ 44. The allegation that the City did not grade the exam is directly at odds with this crucial allegation in ¶ 44. For this reason, Plaintiff's *Shakman* claim is dismissed. However, as explained below, because this flaw could be corrected by repleading, the Court in its discretion (see, *e.g. Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009)), will give Plaintiffs a last opportunity to do just that. And because the Court surmises that Plaintiffs will file yet another amended pleading, the Court will move on to consider the remainder of Defendant's arguments.

Defendant's last argument against the *Shakman* claim is that "even if Plaintiffs' contradictory allegations could somehow be reconciled * * * [t]here are still no allegations in the Amended Complaint sufficient to raise above the 'speculative level' any possibility that the City's offering of the June re-test was politically motivated." (Def. Mem. at 12). The Court disagrees. If Plaintiffs drop their allegation that the City never graded the January test, they have alleged facts sufficient to plausibly state a claim under the *Shakman* doctrine.

Again, to establish a *Shakman* violation, Plaintiffs must plead and prove that a political reason or factor was the cause of the complained of decision. *Shanahan v. City of Chicago*, 82 F.3d 776, 780 (7th Cir. 1996); see also *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992); *Everett v. Cook County*, 704 F. Supp. 2d 794, 504 (N.D. Ill. 2010). Plaintiffs allege that "certain individuals that the City wanted promoted because of their political affiliations, had not passed the January 6th Oral Exam." FAC ¶ 44. Plaintiffs further allege that "the City re-administered the test to give those certain individuals another opportunity to make the Promotional List." *Id*. Plaintiffs then provide an example – Sergeant Anthony Carothers

benefitted from political affiliations with his brother, Alderman Issac Carothers, who chaired the City Council's Police and Fire Committee. *Id*. at ¶¶ 45-46.[2]

These allegations are sufficient to give Defendant fair notice of the nature of Plaintiffs' claim. *Twombly*, 550 U.S. at 555. And while it seems unlikely that the City would re-administer an entire test (and make that retesting open to all applicants) simply to favor a few politically-connected applicants who had failed the first time, such a theory is not so facially implausible so as to render the complaint subject to dismissal. *Id.*; *Concentra Health Services, Inc.*, 496 F.3d at 776. Defendant argues that it had no way of even knowing which applicants would take the re-test, or even if those who took the re-test would improve their scores. Here, it is plausible that the City thought that an individual might perform better the second time that he encountered the same test questions.

Accordingly, and for the reasons discussed above, Plaintiffs' *Shakman* claim is dismissed without prejudice.[3]

**B.     Remaining State Claims**

Plaintiffs' sole basis for federal jurisdiction over this lawsuit is their *Shakman* claim (Count I). Plaintiffs' First Amended Complaint also includes five state law claims: writ of mandamus (Count II), permanent injunction (Count III), temporary injunction (Count IV),

---

[2] Plaintiffs do not specifically allege that Carothers failed the January test. However, based on the structure and organization of ¶¶ 49 and 50, and reading all reasonable inferences in favor of Plaintiffs, the Court could interpret the complaint as identifying Carothers as an "example" of one of the "individuals that the City wanted promoted because of their political affiliations [and who] had not passed the January 6th Oral Exam." Similar analysis could lead the Court to infer that the City told applicants like Carothers that they had failed, and that they should take the re-test. See ¶¶ 44-45.

[3] This lawsuit has been pending in this Court for nearly three years. Furthermore, the Court is aware that two other Chicago Police sergeants unsuccessfully pursued an injunction in the Circuit Court in June of 2007, seeking to bar the City from administering the re-test. According to Defendant, the amended complaint is the first instance in which the allegations in ¶¶ 43-47 have been raised. As puzzling though this may be, the Court, as it must, accepts the allegations in ¶¶ 43-47 as true for the purpose of the instant motion.

fraudulent misrepresentation (Count V), and declaratory judgment (Count VI). Having dismissed the *Shakman* claim, for the reasons explained in the Court's prior order, the Court would normally decline to assert supplemental jurisdiction over these state law claims. See *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). However, because the Court expects that Plaintiffs will file an amended complaint in this matter, the Court will address the arguments that Defendant makes against Plaintiff's state law claims, and dismisses all of them.

First, the Court dismisses Count II of the complaint, which is for a writ of mandamus. Mandamus is an "extraordinary" remedy and is appropriate "only where there is a clear right to the requested relief, a clear duty of the [public official] to act, and clear authority in the [public official] to comply with writ." *Orenic v. Illinois State Labor Relations Bd.*, 537 N.E. 2d 784, 791 (Ill. 1989). Furthermore, "[m]andamus usually issues to compel the performance of a nondiscretionary, ministerial duty or act." *Chicago Ass'n of Commerce & Industry v. Regional Transp. Authority*, 427 N.E. 2d 153, 156 (Ill. 1981) ("Where the performance of an official duty or act involves the exercise of judgment or discretion, the officer's action is not subject to review or control by mandamus."). Plaintiffs allege that the City's administration of the Lieutenant's Exam is a ministerial function and demand the City to implement fair testing procedures and to discontinue use of the results of the 2007 round of testing as the basis for promotion to the rank of lieutenant. FAC ¶ 59.

Count II is subject to dismissal for a number of reasons. First, Plaintiffs fail to demonstrate that they have a "clear right" to a promotional process other than the one that they were subject to. To the contrary, Plaintiffs concede that they do not claim that they have a right to promotion from sergeant to lieutenant. See *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir. 1985) ("Promotion to lieutenant's rank is not a matter of right and is not governed by

fixed rules which if complied with automatically entitle the applicant to promotion."); see also *id.* at 1056 (there is no "constitutional right, unrelated to racial or other discrimination, to a rational test for promotion to a higher rung in the civil service of a state or municipality"). Furthermore, Plaintiffs have not alleged that there is a particular methodology that the City must employ in regard to how it conducts tests for advancement. The City certainly exercised its discretion in electing to offer the June re-test using the same questions as were used in January. Accordingly, that decision falls outside the scope of a mandamus action, and Plaintiffs' Count II is properly dismissed. *Chicago Ass'n of Commerce & Industry*, 427 N.E. 2d at 156.

Next, Defendants argue that Count III (permanent injunction) and IV (temporary injunction) should be dismissed as Plaintiffs have "plead no facts suggesting that they lack an adequate remedy at law or that they will suffer irreparable harm absent injunctive relief." (Def. Mem. at 16). At the outset, Counts III and IV are dismissed because "'injunctive relief and specific performance are remedies, not independent causes of action.'" *AT&T Capital Services, Inc. v. Shore Financial Services, Inc.*, 2010 WL 2649874, at *17 (N.D. Ill. June 30, 2010) (quoting *Am. Nat'l Bank & Trust Co. of Chi. v. Allmerica Fin. Life Ins. & Annuity Co.*, 2003 WL 1921815, at *4 (N.D. Ill. April 21, 2003)); see also BLACK'S LAW DICTIONARY 201 (1979) (defining cause of action as "[a] situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf."). If Plaintiffs believe that they can meet the requirements of establishing their entitlement to an injunction, see *id*., they may file a motion requesting such relief.

Similarly, Count VI seeks a declaratory judgment that the City's use of the results from the June re-test was illegal. In construing the Illinois declaratory judgment act, the Supreme Court of Illinois held that "a declaratory judgment action is strictly remedial" and that "the

statute does not create substantive rights or duties, but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." *Beahringer v. Page*, 789 N.E.2d 1216, 1223-24 (Ill. 2003). "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Id.* at 1223. Plaintiffs may be able to prove that they are entitled to a declaratory judgment. However, Plaintiffs point to no legal authority suggesting that a declaratory judgment claim alone could state an independent cause of action. Accordingly, Count VI is dismissed. Plaintiffs should clarify the types of relief that they are seeking (namely, an injunction and a declaratory judgment) in the "prayer for relief" section of the complaint.

The Court next considers whether Plaintiffs have adequately pled a claim for fraudulent misrepresentation (Count V). They have not. In order to state a cause of action for fraudulent misrepresentation, a plaintiff must establish that "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to other party resulting from such reliance." *Bd. of Education of City of Chicago v. A, C & S, Inc*. 546 N.E.2d 580, 591 (Ill. 1989). In order to survive the pleading stage, the Supreme Court of Illinois concluded that "[t]he facts which constitute an alleged fraud must be pleaded with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer." *Id*. at 593; see also Fed. R. Civ. Proc. 9(b). Thus, the pleading must include "what misrepresentations were made, when they were made, who made the representations and to whom they were made." *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166-67 (Ill. App. Ct. 1st Dist. 2009); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreens Co.*, 631

F.3d 436, 442 (7th Cir. 2010) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (a plaintiff alleging fraud "ordinarily must describe the "who, what, when, where, and how" of the fraud—'the first paragraph of any newspaper story.'")). Plaintiffs fail to state a claim for fraudulent misrepresentation; in fact they do nothing more than merely recite the basic elements of a fraud claim. Plaintiffs baldly allege that the City "made numerous materially false statements in reference to the practices it would use to promote sergeants to the grade of lieutenant," but fail to identify any specific false statement. Similarly, Plaintiffs fail to identify any action taken by CPSA members in reliance on those statements, or damage to CPSA member resulting from reliance on the City's fraudulent statements.[4]

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [139] is granted and Plaintiffs' First Amended Complaint [135] is dismissed in entirety without prejudice. Plaintiffs are given 21 days from the date of this order in which to file an amended complaint if they believe that they can cure the pleading deficiencies identified above, at least as to Count I (which provides the sole basis for this Court's original jurisdiction).

Dated: July 6, 2011

Robert M. Dow, Jr.
United States District Judge

---

[4] In defense of Count V, Plaintiffs state that their fraud claim "should be subject to amendment pending discovery and not subject to dismissal." Plaintiffs cite no authority to support this statement, and the law is otherwise. Fed. R. Civ. Proc. 12(b)(6); 9(b).

17